## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| TODD FOWBLE<br><br>            PLAINTIFF,<br><br>v.<br><br>PRINCE GEORGE'S COUNTY,<br>MARYLAND,<br>PRINCE GEORGE'S COUNTY POLICE<br>DEPARTMENT,<br>DAVID ROBINSON,<br>JAMES McCREARY,<br>MALIK AZIZ,<br>ANGELA ALSOBROOKS, and<br>DONNELL TURNER<br><br>            DEFENDANTS. | CIVIL ACTION No.:  8:24-cv-01019<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

NOW COMES the Plaintiff, Todd Fowble, by and through his attorney, Ray M. Shepard and The Shepard Law Firm and pursuant to the Fifth and Fourteenth Amendments of the United States Constitution, 42 U.S.C. §§ 1983 and 1988, and Article 24of the Maryland Declaration of Rights, and does hereby sue the Defendants, Prince George's County, the Prince George's County Police Department, David Robinson, James McCreary, Malik Aziz, Angela Alsobrooks, and Donnell Turner, for violations of his rights guaranteed by the United States Constitution and the Maryland Declaration of Rights.  In support of his causes of action, Plaintiff alleges as follows:

## PARTIES

1.      Plaintiff Todd Fowble is a citizen of the United States residing in Carroll County, Maryland.  Todd Fowble was at all relevant times a police officer in the Prince George's County Police Department employed by Prince Georges County, Maryland.  He was assigned to the

Robbery Suppression Team (R.S.T.) and Crimes Against Persons.  Before and after the events alleged in this Complaint, Plaintiff Fowble consistently received outstanding performance appraisals from his chain of command.

2.      Defendant Prince George's County is a municipal corporation and body politic located in Prince George's County, Maryland.  Pursuant to the Prince George's County Charter, § 101, Prince George's County has all rights and powers of local self-government and home rule. Prince George's County maintains and operates a police force, known as the Prince George's County Police Department.  Police officers with the Prince George's County Police Department are employees of Prince George's County.  Prince George's County has *respondeat superior* liability for Plaintiff's State Constitutional claims.

3.      Defendant Prince George's County Police Department (the "PGPD") is the police force maintained and operated by Prince George's County, Maryland.

4.      Defendant David Robinson was at all relevant times a police officer in the Prince George's County Police Department.  Robinson served as the Assistant Commanding Officer within the Internal Affairs division of the PGPD. Robinson retired from the police department after the events alleged in this Complaint.  Robinson is sued in his individual capacity as an officer within the police department.

5.      Defendant James McCreary was at all relevant times a police officer in the Prince George's County Police Department.  McCreary served as the Commanding Officer within the Internal Affairs division of the PGPD.  McCreary has been promoted to Deputy Chief of Police. McCreary is sued in his individual capacity.

6.      Defendant Malik Aziz was at all relevant times the Chief of Police in the Prince George's County Police Department. Aziz is the ultimate approval authority within the police

department for disciplinary actions initiated within the police department. Aziz is sued in his individual capacity.

7.    Defendant Angela Alsobrooks is currently the Prince George's County Executive. Alsobrooks directed that the cases of officer discipline involving the PGPD be approved by her and/or her office.  Prior to becoming the County Executive, Alsobrooks was the State's Attorney for Prince George's County.  Alsobrooks is sued in her individual capacity.

8.    Defendant Donnell Turner was at all relevant times the Inspector General for Prince George's County.  Turner reported directly to Alsobrooks and her office for matters relating to officer discipline cases. Turner has since been sworn in as a Circuit Court Judge in Prince George's County. Turner is sued in his individual capacity.

## JURISDICTION AND VENUE

9.    This Court has subject matter jurisdiction over Plaintiff's Federal Constitutional claims pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983.

10.    This Court has supplemental jurisdiction over Plaintiff's State Constitutional claims pursuant to 28 U.S.C. § 1367(a).

11.    Proper notice of this action was provided to the Prince George's County Attorney in accordance with Md. Cts. & Jud. Proc. Code § 5-304(b). **Exhibit 1.**

12.    Venue is proper in the District of Maryland pursuant to 28 U.S.C. § 1391(b) because multiple Defendants reside in the district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

## STATEMENT OF FACTS

13.    On September 14, 2015, Plaintiff Todd Fowble of the Prince George's County Robbery Suppression Team was called to a robbery scene in New Carrollton, Maryland and was met by a victim alleging that he had been robbed at gunpoint. The victim made an ATM withdraw

at a local 7-11 store and then walked home.  The two suspects, one of whom possessed a gun, followed him home where they proceeded to rob him at gunpoint at his front door.

14.     New Carrollton, Maryland has its own police department, but does not investigate robberies that occur within their jurisdiction. At Plaintiff Fowble's request, officers from New Carrollton joined him in reviewing the surveillance footage at 7-11. The New Carrollton officers identified the suspects and provided their names to Plaintiff Fowble. Video surveillance was obtained for evidence and a written statement by the identifying officers was collected.

15.     Plaintiff Fowble returned to his station and created two separate six-person double blind photo arrays, one for each suspect, and provided them to Detectives on his squad. The victim identified both suspects.  Based on these identifications, Plaintiff Fowble drafted a warrant application for arrest of the gunman.

16.     Plaintiff Fowble received a phone call from one of the New Carrollton police officers who stated that he unintentionally supplied the incorrect name for the "lookout" when reviewing the 7-11 video footage.  The officer explained the lookout had a family member having the same appearance and the officer confused the two.

17.     Plaintiff Fowble told the officer that the victim had chosen both suspects that he provided earlier that morning. The New Carrollton officer said that would make sense because of how similar the "lookout's" appearance is to the name he provided earlier in the day. Plaintiff Fowble set up a meeting for the following day to get all the correct information.

18.     The next morning PGPD's Homicide Unit arrested the "gunman," and he was being interviewed. The gunman admitted his involvement in the robbery, signed a photograph of who his "lookout" was and provided a statement identifying the "lookout." The individual that the

"gunman" identified as the lookout was the second name provided to Fowble by the New Carrollton officer.

19.    The New Carrollton officer provided a photograph of the updated "lookout" and an updated written statement to Plaintiff Fowble. Plaintiff Fowble then took that photograph and made a third six-person double blind photo array and had a new officer show that array to the victim. The victim did not choose the suspected lookout out of that lineup. Plaintiff Fowble then showed him multiple still photographs from the 7-11 footage in which he identifies that the subjects that were in the still photographs are the people that robbed him.

20.    Under direction and authorization of his supervisors, Plaintiff Fowble filed a warrant for the "lookout," who was not the person initially identified by the victim in the six-person double blind photo array he reviewed on the day of the robbery.

21.    Assistant State's Attorney Lisa Mann was assigned to the case. Plaintiff Fowble copied his entire case file and provided it to Ms. Mann. He explained to Ms. Mann that the "gunman" was identified by a six-person double blind photo array, but the "lookout" was identified through "various photo arrays."

22.    A preliminary hearing was set in at the Upper Marlboro courthouse on October 15, 2015. During the hearing, Ms. Mann continually asked Plaintiff Fowble how he identified the "lookout," and he kept answering, "through various photo arrays." At one point during the hearing, Ms. Mann asked the judge for the court's indulgence while she whispered in Plaintiff Fowble's ear "Listen to the fucking question." Plaintiff Fowble quietly responded that he was listening to her question but was confused as to the answer she wanted to hear.

23.    At that point Plaintiff Fowble realized Ms. Mann was unaware of how he identified the "lookout," despite having received his entire investigative file. It was apparent Ms. Mann

wanted Plaintiff Fowble to say that the lookout was identified, like the gunman, using a double-blind photo array method even though that was not the truth.

24.     Months later, a motions hearing for the case was set and all the detectives that showed six-person double blind photo arrays were summonsed to testify. Several detectives questioned Plaintiff Fowble regarding why they were summoned to attend court. He informed them that he believed the only person that needs to be there is the detective that showed the six-person double blind photo array of the "gunman." The other two detectives questioned Ms. Mann on why they were needed for court. Ms. Mann told the detectives they needed to testify that they showed the six-person double blind photo arrays. However, the "gunman" was the only suspect identified using that method. Mrs. Mann stated that this was the first time she had heard about this, and accused Plaintiff Fowble of lying in the preliminary hearing. Ms. Mann then dropped the charges against the suspects.

25.     As Plaintiff Fowble was driving home, he received a phone call from Ms. Mann. Ms. Mann stated the following: "Detective Fowble this is Lisa Mann of the Prince George's County States Attorney's Office. I have an attorney from the public defender's office on the line with me. Detective Fowble, I want you to answer either yes or no to the question I'm about to ask you and that's the only answer I want. Was Defendant Burroughs (the "lookout") identified by a six-person double blind photo array? He said truthfully, "No."

26.     Plaintiff Fowble was subsequently placed in a condition that was referred to as a "time out." Plaintiff Fowble was not suspended, but he was told that during his "time out" he could not take part in any cases, he could not go and investigate incidents and that he couldn't work county overtime or secondary employment.  At the time of these events in 2015, Defendant

Alsobrooks was the State's Attorney and was informed of the reasons for Ms. Mann's dismissal of the charges in the robbery case.

27.     The Prince George's County Police Department General Order Manual specifically states: "No Department employee shall retaliate against any person who, in good faith, initiates or provides information or testimony related to an investigation, prosecution, litigation or hearings related to the Department or Department employees regardless of the context in which the allegation is made, or because of such person's participation in the complaint process as a victim, witness, investigator, or decision-maker or reviewer. *See* Prince George's County Police Department General Order Manual Volume I, Chapter 38, Page 2.

28.     The Internal Affairs Division interviewed Plaintiff Fowble in reference to the situation and on September 13, 2018, Plaintiff Fowble was given an official Internal Affairs Division finding of "non-sustained" for unbecoming conduct and he was reinstated to full duty as a detective again.

29.     In or about December 2018, the Hispanic National Law Enforcement Association NCR and the United Black Police Officers Association, together with individual Hispanic and Black police officers, sued Prince George's County, the former Chief of Police of the Prince George's County Police Department and others in the United States District Court for the District of Maryland.  The case was styled *Hispanic Nat'l Law Enforcement Assoc. NCR et al. v. Prince George's County, et al.,* Case No.: 8:18-cv-03821 (D. Md. 2018) (the "HNLEA Lawsuit").

30.     As part of the HNLEA Lawsuit, the plaintiffs in that case filed a comprehensive analysis of police department operations down to individual officer-level detail authored by Michael E. Graham (the "Graham Report") to demonstrate systemic racism and use of force

policies within the police department.  The Graham Report was filed in the HNLEA Lawsuit on February 22, 2021 (8:18-cv-03821 ECF Doc. #445-13).

31.    In April of 2021, Plaintiff Fowble was notified by his commander that he was placing him in a no public-contact role and that he was to stop investigating cases, stop working secondary employment as well as county overtime, and that the State's Attorney's Office was no longer taking any testimony by him and that he was officially placed on the "Brady List" or "Do Not Call List."  Years had passed since the robbery incident described above and Plaintiff Fowble was never charged or disciplined by the police department for any actions related to that incident.

32.    For two and one-half years, from September 13, 2018 until April 2021, Fowble had continued to serve as a detective in the PGPD and regularly testified in court proceedings during this time period without any problems.

33.    During this same time the HNLEA Lawsuit was continuing to progress. Defendant Angela Alsobrooks directed her Inspector General, Defendant Donnell Turner, to assume oversight and control of all disciplinary investigations and proceedings within the police department.  In compliance with Alsobrooks' directive, Turner became intimately involved in the police department's daily operations, investigations, and disciplinary actions. Defendant Turner informed the police department that all disciplinary actions would need approval from the office of the County Executive prior to implementation.

34.    Upon information and belief, Defendant Turner, at the direction of Defendant Alsobrooks, encouraged and directly influenced Internal Affairs and Police Department personnel, including Defendant Aziz, to have Plaintiff Fowble placed on the "Brady List" or "Do Not Call" List by the Prince George's County State's Attorney's Office despite no investigation or proof of any wrongdoing.

8

35.    During this time, Defendant James McCreary, the Commander of the Internal Affairs Division, was presenting cases directly to Defendant Turner for his input and ultimate approval of the direction of the cases that best suited the interests of the County Executive's Office. Defendant McCreary was also directed to provide names of officers and information to the State's Attorney's Office regarding "Brady List" or "Do Not Call List" placement.

36.    Aisha Braveboy has stated that Defendant McCreary was directly providing her office names of officers to be placed on the "Brady List" or "Do Not Call List," together with justification for such placement.

37.    On February 25, 2021, the American Civil Liberties Union of Maryland ("ACLU") demanded that Defendant Alsobrooks terminate top police department officials, as well as Officers mentioned in the Graham Report and the HNLEA lawsuit. The ACLU also called for widespread reform to the disciplinary procedures and oversight of the police department. *See* ACLU of Maryland demands top PGPD officers resign amid racism allegations (dbknews.com) (Last accessed 10/22/23.)

38.    Defendants Alsobrooks and Turner specifically directed Defendants Aziz, McCreary and Robinson to target white officers, including Plaintiff Fowble, to cover up their pattern of misconduct towards black officers mentioned throughout the HNLEA Lawsuit. Instead of addressing departmental misconduct towards minority officers within the police department, they targeted the Plaintiff and other white officers to aid in their narrative that discipline policies within the police department were racially balanced during litigation of the HNLEA Lawsuit.

39.    Due to the Law Enforcement Officer's Bill of Rights excluding Defendants Aziz, McCreary and Robinson from administratively charging Plaintiff Fowble due to the statute of limitations for such charges and the previous administration already deeming the case "non-

sustained," they collectively aimed at providing Plaintiff Fowble's information to the Prince George's County State's Attorney's Office to have him placed on the "Brady List" or "Do Not Call" List.

40.    Throughout 2021, and with the passing of Anton's Law, citizens in Prince George's County demanded the release of the names of Officers included on the "Brady List" or "Do Not Call List." The public and activists called for Defendant Alsobrooks and Prince George's County State's Attorney Aisha Braveboy to adhere to their demands in regards to the list. Upon information and belief, due to public outcry and the ongoing HNLEA litigation, Defendant Alsobrooks directed Defendants Turner, Aziz and McCreary to supply more predominately white officers to the Prince George's County State's Attorney's Office for addition to the "Brady List" or "Do Not Call List." *See* Activists Demand To See Police Officers On Prince George's 'Do Not Call' List : NPR (Last accessed 01/05/2024).

41.    Upon information and belief, the Internal Affairs Division misrepresented information regarding Plaintiff Fowble's involvement in the 2015 robbery case described above to justify his placement on the "Brady List" or "Do Not Call List" as ordered to do so by Defendants Alsobrooks and Turner due to the ongoing HNLEA lawsuit.

42.    On June 28, 2021, the Washington Post published a very widely viewed article relating to Defendant Alsobrooks spending approximately $17.6 million dollars litigating the HNLEA lawsuit. That enormous amount of taxpayer money being used by Defendant Alsobrooks to combat the HNLEA lawsuit clearly shows just how invested and motivated the County was in its frantic defense of it. *See* Prince George?s has spent millions defending its police department against a federal discrimination lawsuit. - The Washington Post (Last accessed 10/22/23).

43.    Ironically, just weeks earlier, Aisha Braveboy fired a State's Attorney's Office Investigator, retired Captain Meredith Bingley, for reporting to Braveboy her discovery of Internal Affairs detective Cleo Savoy's criminal history, which included a conviction for second-degree assault for breaking a glass storm door, pointing her loaded police-issued handgun at her then-husband and his friend, and then fleeing the scene before other officers arrived.  This information clearly should have been disclosed in accordance with the State's *Brady/Giglio* obligations in all of Savoy's cases and the failure to have done so taints all of Plaintiff Savoy's prior cases, many of which were homicide cases.

44.    For years, Savoy remained silent and failed to inform prosecutors of her criminal history.  Upon information and belief, Savoy is the only police officer ever to have been assigned to the Homicide and Internal Affairs divisions with a criminal record.  This likely occurred because her conviction happened under her maiden name, Cleo M. Johnson. Savoy was never transferred out of the specialty unit she was assigned, which represents a stark difference in the way Plaintiff Fowble was treated.

45.    Rather than cause Cleo Savoy, who is black, to be recommended for the "do not call" list or otherwise act to rectify the failure to disclose Savoy's criminal history over many years in her cases, which include homicide prosecutions, Defendants Aziz, McCreary, Robinson, Turner, and Alsobrooks asked Braveboy to expedite expungement of Savoy's criminal records upon her petition filed on May 4, 2021.

46.    Rather than remove Savoy from the Internal Affairs division, the Defendants collectively ignored her misconduct and allowed her to continue in her position until she retired.

47.    On or about July 20, 2021, the parties in the HNLEA Lawsuit entered a Settlement Agreement filed in the action on July 30, 2021. (8:18-cv-03821 ECF Doc. #566-1).  Pursuant to

the Settlement Agreement, the defendants agreed to pay the plaintiffs and their attorneys $5,290,000 and to revise the police department's promotion and internal disciplinary policies and to implement new General Orders within the police department.

48.    In September of 2021, Captain Rogers Massey sent the following email in to select officers on the "Brady List" or "Do not Call List" at the direction of Defendant McCreary:

> **Release of "Do Not call" List**
> Good Afternoon.
> The Internal Affairs Division has received notification that ASA Braveboy intends to release the names of officers currently placed on the "Do Not Call" to the public. The release is tentatively scheduled for October 1, 2021. The ASA's Office has elected to allow effected officers to submit impact statements, explaining why they should not be on the "'Do Not Call" list. These statements should be emailed to me (Captain Massey #2693) by close of business on September 27, 2021 and I will then forward them to the ASA's Office for review. The Internal Affairs Division has no determination in the outcome of the review. Officers wishing to submit impact statements will be cc'd when the statements are forwarded to the ASA's Office

49.    On October 29, 2021, Aisha Braveboy released the "Brady List" or "Do Not Call" list to the public and appeared on television. During televised news coverage, Braveboy described those officers on the list as "those who have lied" or are "racist, homophobic and sexist."   See ‘Brady List’: Prince George’s Prosecutors Name Officers Barred From Testifying – NBC4 Washington (nbcwashington.com) (Last accessed 01/09/2024).

50.    With the public release of the list, Braveboy also released the policy that was supposedly used to decide if an officer would be added to the "Brady List" or "Do Not Call List." In this policy it states the following:

> The officer made a material misstatement under oath, in an affidavit or probable cause statement, or whose dishonesty affected the charging status of a civilian; the officer was convicted of an impeachable offense or convicted of an offense that was committed in his/her official capacity; or the officer acted in a manner that demonstrates he/she is biased (i.e. racist, homophobic or otherwise prejudiced). Note: In instances where the evidence does not fall within the above categories, the

SAO will exercise its discretion in reviewing the facts and circumstances to determine the appropriate action (i.e. when an officer is acquitted of an impeachable offense.)

51.     Plaintiff Fowble never made a material misstatement under oath and was never convicted of any offense. He was never disciplined administratively for any misconduct, yet he was ultimately added to this public list simply because he was a white officer targeted to help the defendants create a narrative responsive to the HNLEA Litigation.

52.     During this time, the police department, specifically Defendants McCreary and Robinson, as directed, were providing names of white officers to add to the "Brady List" or "Do Not Call List."

53.     Throughout these events, Defendants Turner and Alsobrooks pushed the Prince George's County Police Department to vigorously pursue white officers who could be added to the "Brady List" or "Do Not Call List" to quell public outcry about disproportionate  police discipline of black and Hispanic officers as alleged in the ongoing HNLEA Lawsuit.

54.     In contrast to Plaintiff Fowble's treatment, several black officers were either not included, or were removed from the "Brady List" or "Do Not Call List" prior to it being released to the public. Defendants McCreary and Robinson, as well as the other Defendants, specifically provided names and information to the State's Attorney's Office to fit their agenda while purposefully not disclosing others.

55.     Corporal Anthony Ayers, who is black, was found on the witness stand to be incredible by a Prince George's County Circuit Court Judge during a criminal trial of a suspect involved in a four-wheeler pursuit. Ayers was placed on the "Brady List" or "Do Not Call List" but was removed before the list was released to the public despite the published policy.

56.     On May 11, 2017, Detective Adrian Crudup, who is black, was indicted on charges of witness intimidation, misconduct in office and accessory after the fact for his involvement in interfering with an ongoing police investigation. He was also charged with termination by the police department for these actions and is no longer a police officer. Despite this information, his name was not included on the public "Brady List" or "Do Not Call List" despite dozens of former police officers being named publicly on the list and despite the published policy. Upon information and belief, Crudup was not included or was taken off the list prior to it being released to the public because he was a black plaintiff in the HNLEA Lawsuit.

57.     Corporal Cordell Barbour, who is black, was indicted for theft scheme and other charges on October 25, 2016. He was found not guilty in September of 2018 in the Circuit Court of Prince George's County. Barbour was demoted internally by the police department for his alleged misconduct. Upon information and belief, Barbour was never added or removed from the "Brady List" or "Do Not Call List" prior to the list being released to the public despite the published policy.

58.     Sergeant Jesse Spence, who is black, referred to Officer Thomas Lester, who is also black, as a "snitch boy." in a text message that was referring to Lester reporting another officer for alleged misconduct.  A photograph of this text message was taken and given to the State's Attorney's Office. Spence was never placed on the "Brady List" or "Do Not Call List" for calling a fellow black officer a "boy" despite the published policy.

59.     Furthermore, in regards to Sergeant Spence, the Defendants blatantly ignored criminal misconduct spanning from 2019 until 2021 involving Spence in regards to alleged theft of time from Prince George's County that was provided to them in an unrelated case. The Internal Affairs Division never investigated Spence and never encouraged the State's Attorney's Office to

place him on the "Brady List" or "Do Not Call List" for his alleged misconduct. This alleged criminal misconduct led Aisha Braveboy to publicly impeach Spence as a State's witness. Braveboy publicly stated that "new witness statements, additional records and *witness impeachment materials* led to the dismissal of charges." *See* [Charges Dismissed In Police Officers' Double-Dipping Case: Braveboy | Bowie, MD Patch](#) (Last Accessed 10/22/2023). Despite this, Spence was never added to the "Brady List" or "Do not Call List."

60.     In or about June 2023, Sergeant Thomas Hilligoss (who is an openly homosexual male officer assigned to Internal Affairs and a part of the police department's LGBQT outreach team) became aware of text messages involving Sergeant David Chandler and Sergeant Lamar Robinson, who are both black, that contained racist, homophobic, and sexist comments. Hilligoss, who was mentioned in the derogatory text messages in the group texts, became frustrated at the fact that Defendants Robinson, and McCreary ignored these messages when they were discovered and refused to initiate any investigation or to discipline the black officers involved.  In fact, despite his degrading and culturally insensitive remarks, Sergeant Chandler was rewarded with a permanent daytime position in the Executive Command office working under Defendant McCreary. Neither Chandler nor Robinson were placed on the "Brady List" or "Do Not Call List" despite the published policy.

61.     During the HNLEA lawsuit litigation in 2021, the Defendants terminated Corporal Simon VanLeuven, a white officer, for a public social media post. VanLeuven's name was provided to the State's Attorney's Office at the direction of Defendant's McCreary, Robinson, Turner, and Alsobrooks and he was included on the Brady List when it was released to the public. David Chandler and Sergeant Lamar Robinson, who made similar social media posts, were not recommended for placement on the Brady List.

62.     Officer Demarco Garcia, who is black, told a citizen to "get the fuck on the ground before I shoot you, nigger" and "get the fuck on the ground before I blow your fucking head off, nigger."  Garcia's violently racist statements were captured on body camera and several charges of using discriminatory language were sustained; however, his punishment consisted only of a short suspension without pay. Garcia was not added to the "Do Not Call" list for his violently racist public comments to a citizen despite the published policy.

63.     On September 22, 2022, the Assistant Chief of Police, Vernon Hale referred to black citizens of Prince George's County as "monkeys" during a crime meeting.  This comment was made in the presence of numerous high-ranking officers, including Defendants Aziz and McCreary, as well as Internal Affairs command staff.  Two black officers at the meeting, Captain Calvin Tyson and Major Katina Gomez, were offended by this comment and voiced their concerns after the meeting.  Subsequently, Assistant Chief Hale circulated an email to the commanders at the meeting offering his "sincere apology" to those offended by his language. Hale was never suspended, investigated, reprimanded, nor administratively charged with this plainly culturally insensitive language. " Assistant Chief Hale was not added to the "Brady List" or "Do Not Call" list despite the policy that was put into effect. This is in stark contrast to Corporal Anthony Brooke, a white officer, who was added to the "Brady List" or "Do Not Call List" for private, off-duty text messages on a personal cell phone at the direction of Defendant McCreary.

64.     In 2016, Cpl. Earl Sharpe, who is black, was administratively charged by the Internal Affairs Division for alleged misconduct involving workers compensation fraud. He was subsequently demoted in rank. Despite this alleged misconduct, and it fitting the criteria in which an officer would be included on the public "Brady List" or "Do Not Call List," Sharpe was not a part of the public list. Upon information and belief, the Defendants collectively lobbied to not have

him added, or to remove him because he was a black plaintiff in the HNLEA Lawsuit against Prince George's County.

65.     Cpl. Michael Brown, who is black, was terminated due to an off-duty incident that occurred in Washington, D.C. that involved him pointing his duty firearm at a citizen during an altercation. Brown was ultimately terminated from the police department for this alleged misconduct. Despite numerous former white officers being included on the public "Brady List" or "Do Not Call List," Brown was not included because he was a black plaintiff in the HNLEA Lawsuit against Prince George's County. This is another glaring example of the desperate nature of the Defendants' actions while providing names for the public list.  For example, Corporal James Thornley, who is white, was added to the public list for an off-duty incident involving his duty firearm.

66.     Cpl. Clarence Rucker, who is black, was suspended by the Internal Affairs Division in 2015 for having inappropriate relations with victims while assigned to the Criminal Investigations Division, Domestic Violence Unit. He resigned before any final discipline. Despite his blatant misconduct and violations of ethics, the Defendants did not provide his information to the State's Attorney's Office to be added to the "Brady List" or "Do Not Call List" because he was a black plaintiff in the HNLEA Lawsuit. However, Lieutenant Richard Tallant, who is white, was added to the public list for alleged inappropriate conduct with a subordinate.

67.     These incidents are a few of many blatant examples of the Defendant's selectively targeting white officers, such as Plaintiff Fowble, to be placed on the "Brady List" or "Do Not Call List" to further advance their HNLEA Lawsuit defense narrative regarding fair and balanced police reforms. During this time, Defendants Aziz, McCreary and Robinson, at the direction of

Defendants Turner and Alsobrooks, were selectively providing information to the Prince George's County State's Attorney's Office regarding the "Brady List" and "Do Not Call List."

68.    Defendants Alsobrooks and Turner, instead of actually addressing departmental misconduct towards minority officers within the police department, intentionally instructed the senior police leader Defendants to target the Plaintiffs to make the police department's discipline policies appear more balanced as part of the County's enormous efforts to answer the allegations being leveled against the police department in the HNLEA Lawsuit. Defendant Alsobrooks used the Internal Affairs division to orchestrate investigations and the "Brady List" or "Do Not Call List" that were intended to make it appear as if her office was addressing the issues of discrimination alleged in the HNLEA lawsuit and to protect her image as County Executive in furtherance of her own political campaigns and aspirations.

69.    The police department, including Aziz, McCreary and Robinson blindly and willingly followed the directions of the County Executive. Plaintiff Fowble was never charged or disciplined by the police department and his information should have never been provided to the State's Attorney's Office for use on the "Brady List" or "Do Not Call List."

70.    As a direct result of the Defendants' combined and calculated actions, Plaintiff Fowble was defamed and slandered on a local and national level. A Google search of his name does not reveal all the exceptional work he participated in throughout his career but instead leads to numerous articles about the "Brady List" or "Do Not Call List." Neither the articles on the internet nor the stain to his reputation can be erased.

71.    If Plaintiff Fowble decides to apply for a different position, every background check or questionnaire will require him to disclose his public placement on this list. This malicious targeting has completely derailed his career and personal life. Plaintiff Fowble was also passed

over on several transfer opportunities because of his duty status and the stigma surrounding him
and his departure from the PGPD.

COUNT I
FIFTH & FOURTEENTH AMENDMENTS
STIGMA PLUS CLAIM
42 U.S.C. § 1983
(Todd Fowble v. Malik Aziz, David Robinson,
James McCreary, Angela Alsobrooks, and Donnell Turner)

72.    Plaintiff incorporates the previous allegations in paragraphs 1 through 71 as if
restated herein verbatim.

73.    Federal law imposes liability on anyone who, under the color of state law, deprives
a person of any rights, privileges, or immunities secured by the Constitution or laws of the United
States.  42 U.S.C. § 1983.  As set forth herein, the Defendants acting under color of state law
deprived Plaintiff of rights, privileges, or immunities protected by the Fifth and Fourteenth
Amendments of the United States Constitution.

74.    The Fifth and Fourteenth Amendments to the United States Constitution prohibit
the government from depriving Plaintiffs of "life, liberty, or property" without due process of law.
"The Supreme Court has acknowledged a constitutional liberty interest in one's reputation."
*Elhady v. Kable*, 993 F.3d 208, 225 (4th Cir. 2021)(citing *Kerry v. Din,* 576 U.S. 86, 91-92 (2015)).
A plaintiff claiming reputational injury "must show [(1)] a statement 'stigmatizing his good name'
and damaging his standing in the community; (2) some type of dissemination or publication of the
statement; and (3) some other government action that 'alter[s] or extinguishe[s] one of his legal
rights." *Id.* (quoting *Paul v. Davis,* 424 U.S. 693, 706-711 (1976)).

75.    As more particularly described herein the Defendants made, caused to be made,
and/or approved of multiple false statements, misrepresentations, and false reports to Prince

George's County Prosecutors designed to convince the prosecutors that the Plaintiffs should be placed on the "Brady List" or "Do Not Call List," which identified officers who "made a material misstatement under oath, in an affidavit or probable cause statement, or whose dishonesty affected the charging status of a civilian; the officer was convicted of an impeachable offense or convicted of an offense that was committed in his/her official capacity; or the officer acted in a manner that demonstrates he/she is biased (i.e. racist, homophobic or otherwise prejudiced)."

76.    On October 29, 2021, Aisha Braveboy released her "do not call" list to the public and appeared on television. During televised news coverage, Aisha Braveboy described the officers on the list as "those who have lied" or are "racist, homophobic and sexist."

77.    Plaintiff's constitutionally protected liberty interest in his reputation under the Fifth and Fourteenth Amendments to the United States Constitution was severely and permanently damaged and his ability to continue to work as police officers was negatively affected.

78.    In addition to the public campaign to stigmatize and humiliate the Plaintiff, the Plaintiff suffered unwanted transfers within the PGPD, demotion, suspension, loss of benefits and promotion opportunities, loss of pay, loss of job title and supervisory responsibility, was restricted in his duties and prevented from having public contact and prevented from performing his duties as a police officer, and forced into early retirement.   Plaintiff has been denied numerous employment opportunities because of his placement on the Brady/Do Not Call List.

79.    The police officer defendants, acting in collusion with each other and at the direction of Defendants Alsobrooks and Turner, intended to cause the State's Attorney's Office to place the Plaintiff on the "Brady List" or "Do Not Call List" without any proper justification.

80.    The Defendants lacked any reasonably good faith belief that the Plaintiff should be included on the "Brady List" or "Do Not Call List" but acted to cause his placement on the list

anyway. In doing so, the Defendants acted intentionally and maliciously, with an evil motive and ill will towards the Plaintiff, with reckless or callous indifference to Plaintiff's rights and intending to cause actual harm to the Plaintiff.

WHEREFORE, Plaintiff demands economic, noneconomic, and punitive damages against the aforesaid defendants, jointly and severally, in an amount to be determined at trial, together with reasonable attorney's fees, expert witness fees and other costs as permitted by 42 U.S.C. § 1988.

COUNT II
FIFTH AND FOURTEENTH AMENDMENTS
EQUAL PROTECTION
42 U.S.C. § 1983
(Todd Fowble v. Malik Aziz, David Robinson,
James McCreary, Angela Alsobrooks, and Donnell Turner)

81.    Plaintiffs incorporate the previous allegations in paragraphs 1 through 71 as if restated herein verbatim.

82.    Federal law imposes liability on anyone who, under the color of state law, deprives a person of any rights, privileges, or immunities secured by the Constitution or laws of the United States. 42 U.S.C. § 1983. As set forth herein, the Defendants acting under color of state law deprived Plaintiff of rights, privileges, or immunities protected by the Fifth and Fourteenth Amendments of the United States Constitution.

83.    The Equal Protection Clauses of the Fifth and Fourteenth Amendments of the United States Constitution prohibit the government from subjecting its employees to disparate treatment in the terms or conditions of their employment or in taking adverse employment actions based on race or color.

84.    Plaintiff Fowble is white.

85.    Prior to his placement on the "Brady List" or "Do Not Call List," Plaintiff consistently received outstanding performance appraisals from his chain of command and in every respect satisfactorily performed his duties as a police officer.

86.    As described more fully herein, Plaintiff was subjected to adverse employment actions, including but not limited to placement on the "Brady List" or "Do Not Call List," unwanted transfers within the PGPD, demotion, suspension, loss of benefits and promotion opportunities, loss of pay, loss of job title and supervisory responsibility, restriction of his duties, prohibiting contact with the public and otherwise preventing him from performing his duties as a police officer.

87.    As set forth herein, Plaintiff was placed on the "Brady List" or "Do Not Call List" while other similarly situated officers who were not white received more favorable treatment.

88.    As a direct and proximate result of the unlawful discrimination, Plaintiff has suffered significant damages.

WHEREFORE, Plaintiff demands economic, noneconomic, and punitive damages against the aforesaid defendants, jointly and severally, in an amount to be determined at trial, together with reasonable attorney's fees, expert witness fees and other costs as permitted by 42 U.S.C. § 1988.

COUNT III
ARTICLE 24 OF THE MARYLAND DECLARATION OF RIGHTS
STIGMA PLUS CLAIM
(Todd Fowble v. All Defendants)

89.    Plaintiff incorporates the previous allegations in paragraphs 1 through 71 and 73 through 80 as if restated herein verbatim.

90.    Article 24 of the Maryland Declaration of Rights is the Maryland counterpart to the due process clauses found in the Fifth and Fourteenth Amendments to the United States

Constitution and are in *pari materia* with its federal counterparts. *Allmond v. Dep't of Health & Mental Hygiene,* 448 Md. 592, 609 (2016).

91.    Prince George's County and/or the Prince George's County Police Department have *respondeat superior* liability for Defendants Malik Aziz, David Robinson, James McCreary, Angela Alsobrooks, and/or Donnell Turner's violation of Plaintiff's rights secured by Article 24 of the Maryland Declaration of Rights.

WHEREFORE, Plaintiff demands economic, noneconomic, and punitive damages against the aforesaid defendants, jointly and severally, in an amount to be determined at trial, together with reasonable attorney's fees, expert witness fees and other costs as permitted by law.

COUNT IV
ARTICLE 24 OF THE MARYLAND DECLARATION OF RIGHTS
EQUAL PROTECTION
(Todd Fowble v. All Defendants)

92.    Plaintiff incorporates the previous allegations in paragraphs 1 through 71 and 82 through 88 as if restated herein verbatim.

93.    Although the Maryland Constitution contains no express equal protection clause, it is settled that the Due Process Clause of the Maryland Constitution, contained in Article 24 of the Declaration of Rights, embodies the concept of equal protection of the laws to the same extent as the Equal Protection Clause of the Fourteenth Amendment. *Myong Nam Kim v. Bd. of Liquor License Comm'rs for Balt. City,* 255 Md. App. 35, 60 (Md. App. 2022)(citing *Murphy v. Edmonds,* 325 Md. 342, 353-43, 601 A.2d 102 (1992); *Hargrove v. Bd. of Trs.*, 310 Md. 406, 416, 529 A.2d 1372 (1987)); *see also Manikhi v. Mass. Transit Admin.,* 360 Md. 333, 361, 758 A.2d 95, 110 (2000).

94.    Prince George's County and/or the Prince George's County Police Department have *respondeat superior* liability for Defendants Malik Aziz, David Robinson, James McCreary, Angela Alsobrooks, and/or Donnell Turner's violation of Plaintiffs' rights secured by Article 24 of the Maryland Declaration of Rights.

WHEREFORE, Plaintiff demands economic, noneconomic, and punitive damages against the aforesaid defendants, jointly and severally, in an amount to be determined at trial, together with reasonable attorney's fees, expert witness fees and other costs as permitted by law.

### **DEMAND FOR JURY**

95.    Plaintiff respectfully demands trial by jury.

April 8, 2024                                                    Respectfully Submitted,


                                                                /s/Ray M. Shepard
                                                                Ray M. Shepard, Bar No. 09473
                                                                The Shepard Law Firm, LLC
                                                                122 Riviera Drive
                                                                Pasadena, Maryland 21122
                                                                Phone: 410-255-0700
                                                                Facsimile: 443-773-1922
                                                                Email: Ray@Shepard.Law

                                                                *Counsel for Plaintiff Todd Fowble*