**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

TODD FOWBLE, *

Plaintiff, *

v. * Civil Action No. 8:24-cv-1019-PX

PRINCE GEORGE'S COUNTY,
MARYLAND *et al*,

*

Defendants.

***

**MEMORANDUM OPINION**

Pending in this civil rights action is a motion for summary judgment filed by Defendants Prince George's County (the "County"); the Prince George's County Police Department (the "Police Department"); Police Department officials Malik Aziz, David Robinson, James McCreary, and Donnell Turner; and then-County Executive, Angela Alsobrooks. ECF. No. 43. Plaintiff, Police Officer Todd Fowble, opposes the motion. ECF No. 46. No hearing is necessary. *See* D. Md. Loc. R. 105.6. Because Fowble lacks standing to sue, summary judgment is granted in Defendants' favor.

## I. Background

This matter arises from the Prince George's County State's Attorney's Office ("SAO")'s decision to compile and disseminate a do-not-call list of County police officers whose past misconduct rendered them unsavory witnesses in criminal prosecutions. Fowble was one such officer. His placement on the do-not-call list stemmed from a 2015 robbery case where the assigned Assistant State's Attorney believed that Fowble had lied about identifying the suspect. ECF No. 46-7 at 4. The prosecutor, in turn, referred Fowble for criminal investigation as well as disciplinary action with the Police Department's Internal Affairs Division ("IAD"). *Id*. at 5.

Two years later, the SAO declined to prosecute Fowble, ECF No. 46-3, and soon after, IAD determined that the perjury allegations could not be sustained. ECF No. 46-4. Nonetheless, in 2021, the State's Attorney, Aisha Braveboy ("Braveboy"), included Fowble in her office's do-not-call list. ECF No. 43-4.

Renee Joy ("Joy"), Chief of the SAO's Public Integrity Unit, explained that historically, the SAO had maintained various forms of the do-not-call list internally. ECF No. 43-5 at 13:13–16. But in 2021, Braveboy asked Joy to review list for accuracy. *Id.* at 16:17–17:5. Joy, in turn, independently reviewed IAD information that the SAO had obtained from the Police Department as part of discovery related requests in criminal prosecutions. *Id.* at 18:2–20:21. Joy also gathered information from prosecutors and County attorneys responsible for representing officers in civil and collateral matters related to the disclosure of IAD files. *Id.*

After Joy performed the review, Braveboy submitted in writing to Interim Police Chief Hector Velez ("Velez") the do-not-call list as of January 2021. ECF No. 43-4. The letter named 15 police officers, including Fowble, whom Braveboy determined had "materials" that must be disclosed as part of criminal discovery that also reflected poorly on their "character . . . for untruthfulness," or for bias or prejudice. *Id.* (quoting Md. R. 4-263(d)(6)(A) and Md. R. 5-616(a)(4)). Braveboy further expressed that because the officers' "actions have proven to compromise the integrity and strength of our cases," the SAO would not call them as part of any criminal prosecution. Thus, Braveboy "implored" Velez not to place the listed officers in a position where they would become "critical witnesses." *Id.* at 2. Braveboy also copied Joy, Defendant Donnell Turner ("Turner"), Principal Deputy of the SAO Jason Abbott, and Deputy Chief Administrative Officer for Public Safety Mark Magaw. *Id.*

A few days later, Turner emailed Braveboy's letter to Defendants James McCreary ("McCreary") and David Robinson in IAD. ECF No. 46-1. Turner explained that the do-not-call list had seven officers not included in previous lists, and he asked McCreary for disciplinary information for two of the seven officers. *Id.* at 1. Turner ends the correspondence with, "we should discuss whether/how we are going to challenge [the SAO] decision." *Id.* Nothing in the record suggests any follow-up discussions ever took place, nor was Fowble listed as one of the seven newly included officers. *Id.*

The County and Police Department officials responded to the information they learned from Braveboy's January 2021 letter. County attorney Rhonda Weaver ("Weaver") specifically compiled and disseminated in an email to several County attorneys, County officials, and Police Department personnel supplemental information about the officers on the list. ECF No. 46-2. Weaver also included in the email another letter from Braveboy sent the day before which supported, in Braveboy's opinion, "why these officers will no longer be sponsored as witnesses." ECF No. 43-3.

Relevant to Fowble, Weaver's email certainly identified Braveboy's decision to keep him on the do-not-call list because of his "false testimony" in the 2015 matter. ECF No. 46-2 at 4. But Weaver also noted that the IAD had cleared Fowble of wrongdoing related to the 2015 perjury accusation and further emphasized that Fowble currently "should have no credibility issues." *Id.* at 9. [1]

---

[1] Fowble also takes umbrage at Weaver's erroneous reference to an unrelated 2013 IAD matter and her mischaracterizing his role in *Hispanic Nat'l Law Enforcement Assoc. NCR et al. v. Prince George's County et al.*, No.: 8:18-cv-03821 which he believes were "almost certainly another factor that weighed against [him]." ECF No. 46 at 11–12. However, Fowble adduces no evidence that such information played any role in Braveboy's decision to place or keep Fowble on the do-not-call list. Similarly, Fowble speculates that the Police Department "appears to have intentionally made persuasive arguments" to have Black and Brown officers removed from the list, but did not do the same for Fowble. *Id.* at 13. This argument, too, is speculative. No evidence suggests that the Defendants' views had any influence on Braveboy's list-related decisions.

As for the decision to compile and convey the do-not-call list, it was sole and exclusive to Braveboy. She decided who to include, regardless of whether the Police Department agreed. ECF No. 43-6 at 213:19–214:17. And she decided whether to release the list at all. *Id.* *See also* ECF No. 46-5 (McCreary stating that "Ms. Braveboy made the list public"). Nothing else in the record suggests that Braveboy shared this responsibility or was otherwise influenced by the named Defendants. In short order, the do-not-call list became widely available to the public. *E.g.,* Jenny Gathright, *Prince George's County Releases 'Do Not Call' List of Nearly 60 Officers Deemed Unreliable*, dcist (Oct. 29, 2021), https://dcist.com/story/21/10/29/prince-georges-county-braveboy-do-not-call-list/. Fowble was still on the list. ECF No. 46-5.

Nearly three years later, Fowble sued Defendants for their supposed roles in placing him on the do-not-call list, in violation of the Fifth and Fourteenth Amendments of the United States Constitution and Article 24 of the Maryland Declaration of Rights for alleged reputational harm (Counts I & III) (the "stigma plus" claims), and brings equal protection claims premised on his comparatively disparate treatment as a White officer (Counts II & IV). ECF No. 1 ¶¶ 72–94. Defendants now move for summary judgment in their favor. ECF No. 43. They principally argue that Fowble lacks standing to sue because the claimed injuries are neither traceable to any actions of any Defendant nor redressable by this suit. ECF No. 43-1 at 4–7. For similar reasons, Defendants contend that summary judgment is proper because no evidence establishes any Defendant's participation in promulgating the do-not-call list. *Id.* at 7–8. Because Fowble lacks standing to sue, the Court grants summary judgment in Defendants' favor.

## II. Standing

Pursuant to Article III of the United States Constitution, federal courts are ones of limited jurisdiction, hearing only live "Cases" and "Controversies." U.S. Const. art. III, § 2. A party's

standing to maintain an action "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Davis v. Fed. Election Comm.*, 554 U.S. 724, 733 (2008) (citations omitted). This "standing requirement applies to each claim that a plaintiff seeks to press." *Overbey v. Mayor of Balt.*, 930 F.3d 215, 230 (4th Cir. 2019) (quoting *Bostic v. Schaefer*, 760 F.3d 352, 370 (4th Cir. 2014)). The plaintiff bears the burden of demonstrating "standing separately for each form of relief sought." *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000)).

To establish Article III standing, a plaintiff must demonstrate he has suffered an "'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Sierra Club v. United States Dep't of the Interior*, 899 F.3d 260, 283 (4th Cir. 2018) (quoting *Laidlaw Envtl. Servs.*, 528 U.S. at 180–81). Notably, standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Overbey*, 930 F.3d at 227) (citations omitted); *see also Bennett v. Spear*, 520 U.S. 154, 167–68 (1997) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). At summary judgment, the Court may consider all record evidence viewed most favorably to the nonmovant to ascertain whether the Court retains the power to hear the case. *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017). *See also Wikimedia Found. v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 14 F.4th 276, 291–94 (4th Cir. 2021) (concluding that district court erred in grant of summary judgment on lack of standing where factual dispute precluded determination).

Defendants concentrate their standing arguments on lack of traceability or redressability, and so will the Court. For a plaintiff to maintain standing, he must demonstrate the claimed injuries are traceable to the defendants' own acts or omissions and not "the independent action of some third party not before the court." *Rouse v. Fader*, 171 F.4th 272, 280 (2026) (quoting *Lujan*, 504 U.S. at 560). As the Fourth Circuit has recently recognized, where, as here, a plaintiff's injuries derive "*most immediately* from the conduct of a third party," the plaintiff must establish "some causal connection between the defendant's actions and the third party's intervening conduct." *Id.* (emphasis in original) (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 413 (2013)) (rejecting "standing theories that require guesswork as to how independent decisionmakers will exercise their judgment"). Causation sufficient for standing may be established by showing either that a plaintiff's injury was "produced by [the] determinative or coercive effect" of the defendant's action "upon the action of someone else." *Rouse*, 171 F.4th at 281 (quoting *Bennett*, 520 U.S. at 169). Or a plaintiff may demonstrate that "his injury was 'the predictable effect of Government action on the decisions of third parties.'" *Id.* (quoting *Dep't of Commerce v. New York*, 588 U.S. 752, 768, (2019)); *see also Lowy v. Daniel Def., LLC*, 167 F.4th 175, 195–97 (4th Cir. 2026).

Fowble makes no such showing. Critically, Fowble's stigma plus and equal protection claims depend on his inclusion in the do-not-call list. But as to that list, the record indisputably demonstrates that only one person – Braveboy – decided to put him there. Braveboy, in conjunction with the SAO Public Integrity Unit, created and disseminated a list of officers who in the SAO's view could not be sponsored as witnesses in criminal matters prosecuted by her office. ECF No. 43-3; ECF No. 43-4; ECF No. 43-2 at 1; ECF No. 43-5 at 14:11–17:5; ECF No. 43-6 at 213:19–214:17. Nothing suggests the Defendants played *any* role in that decision.

Nor does any evidence support that Defendants' acts either coerced Braveboy to place Fowble on the list or had a "predictable effect" on her. The IAD dismissed the 2015 perjury allegations after investigation, and the only other derogatory information that Defendants had arguably supplied – information about a 2013 investigation and alleged mischaracterization of Fowble in another lawsuit – if communicated to Braveboy at all, had postdated her decision to place Fowble on the do-not-call list. To conclude otherwise would be speculative at best.

Similarly, nothing suggests that the Defendants' involvement in the do-not-call list process led to a "predictable effect" on Braveboy's decisions. Braveboy decided to include Fowble on the list in January of 2021 *after* the Police Department's IAD exonerated Fowble in the 2015 perjury claim. Fowble, however, has adduced no evidence that this or any other information Defendants' generated had any effect on Braveboy's decision to keep Fowble on the list. This is especially problematic where the Defendants appear to have emphasized to Braveboy in 2021 that Fowble has "no credibility issues." *See also* ECF No. 46-2 at 9 ("[Fowble] was investigated for perjury and the facts were not sustained . . . Fowble should have no credibility issues."); ECF No. 46-5 at 3 (same). Despite the Police Department's objections to Fowble's inclusion on the list, Braveboy saw it differently. *See* ECF No. 43-5 at 50:17–51:12, 60:7–14 (explaining that SAO "disagreed with the police department completely" as it concerned Fowble's perjury accusations). Because no evidence suggests Defendants' acts played any role in Bravevoy's decision to place or keep Fowble on the list, his claimed injuries cannot be traced to them. *See Rouse*, 171 F.4th at 282 (citing *Clapper*, 568 U.S. at 412–14).

Similarly, Fowble's claimed injuries are not redressable through this suit. Redressability requires some showing that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Sierra Club*, 899 F.3d at 284 (quoting *Laidlaw Envtl. Servs.*,

528 U.S. at 181). While a plaintiff "need not show that a favorable decision will relieve every injury," he must show that he "personally would benefit in a tangible way from the court's intervention." *Id.* (citations omitted). Central to Fowble's theory of harm is his placement on the do-not-call list with which Defendants played no role. Accordingly, the Court cannot discern how a judgment concluding his placement amounts to constitutional error could be redressed by suing those who played no material role in the wrongdoing. Because Fowble fails to demonstrate standing to sue, summary judgment must be granted on this ground alone. *Wikimedia Found.*, 14 F.4th at 291–94.[2]

## III. Conclusion

Because Fowble lacks standing to sue, the Court grants summary judgment in Defendants' favor. A separate order follows.

| | |
|---|---|
| 11/03/2026 | /s/ |
| Date | Paula Xinis<br>United States District Judge |

[2] For similar reasons, summary judgment is proper on the merits because no evidence supports that any Defendant played any role in Fowble's placement on the do-not-call list. Thus, Defendants cannot be said to have caused or contributed to the reputational harm supporting the stigma plus claims. *See Elhady v. Kable*, 993 F.3d 208, 225 (4th Cir. 2021) (Fifth Amendment claim); *Doe v. Dep't of Publ. Safety & Corr. Servs.*, 185 Md. App. 625, 643–44 (2009) (Maryland Declaration of Rights Claim). Nor could the Defendants fairly be tried as the "governmental decisionmakers" who treated him differently on account of his race. *See Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001) (citing *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). In fact, the evidence points the other way: that Defendants communicated to Braveboy both before and after her decision to place Fowble on the list, that the 2015 incident was without merit from their perspective, and that as far that the Police Department was concerned, Fowble had "no credibility issues." ECF No. 43-5 at 51:1–12, 60:7–14; ECF No. 46-2 at 9; ECF No. 46-5 at 3. On this record, no reasonable juror could hold Defendants responsible for the claimed wrongdoing.